IN THE COURT OF APPEALS OF TENNESSEE

FILED

April 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| JOHNNY R. ROBERTS, SHERIFF OF JOHNSON COUNTY, TENNESSEE, | ) C/A NO. 03A01-9610-CC-00333 |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| v. | ) JOHNSON COUNTY CRIMINAL COURT |
| | ) |
| | ) |
| | ) |
| GEORGE LOWE, COUNTY EXECUTIVE OF JOHNSON COUNTY, TENNESSEE, | ) |
| | ) |
| Defendant-Appellant. | ) HONORABLE ARDEN L. HILL, JUDGE |


For Appellant

WILLIAM B. HAWKINS
Grayson, Hawkins & Wright
Mountain City, Tennessee

For Appellee

H. RANDOLPH FALLIN
Mountain City, Tennessee


O P I N I O N


AFFIRMED IN PART, AS MODIFIED
REVERSED IN PART
REMANDED

Susano, J.

This is a suit by Johnny R. Roberts (Roberts)[1], Sheriff of Johnson County, against George Lowe (Lowe), the Johnson County Executive, for authorization and funding to hire additional deputies and other employees[2] pursuant to T.C.A. § 8-20-101, *et seq.* (1993 & Supp. 1996). In its decision of June 3, 1996, the trial court found that Roberts had proven by a preponderance of the evidence that in order to fully perform the duties of his office, he required four additional deputies, one additional jailer, two new dispatchers, and one part-time bailiff. Accordingly, the trial court authorized those new positions and established salaries for each. It also awarded salary increases for all existing positions, and made all salaries effective retroactively to January 1, 1996. Lowe appeals, raising five issues which in substance present the following questions:

> 1. Did the trial court err in identifying deputies and other positions by name in the judgment, and in awarding salary increases and specific salaries to specifically-named employees?
>
> 2. Did the trial court err in making the salary increases effective retroactively to January 1, 1996?
>
> 3. Did the trial court err in entering the "Supplemental Order" of July 23, 1996?
>
> 4. Did the trial court err in its "Supplemental Order" by failing to authorize the required number of positions and fix salaries for those positions, and by holding that the new positions could be used for "any legitimate activity" of the Sheriff's

---

[1]The petition in this case was originally filed by Edwin R. Casey, Roberts' predecessor as Sheriff of Johnson County. After he was elected Sheriff, Roberts was substituted as plaintiff.

[2]The petition also sought appropriate funding for vehicles, uniforms, training, and equipment. The trial court determined, however, that its jurisdiction was limited to deciding the number of necessary employees and their salaries, and thus it declined to award additional funds for other purposes. That aspect of the judgment has not been appealed.

Department?

5. Does the evidence preponderate against the trial court's award of additional deputies and assistants?

I

Johnson County has a population of 13,766[3]. At the time of trial, the Johnson County Sheriff's Department consisted of the following employees: one sheriff; one cook; one secretary; nine deputies; one county investigator; eight jailers; and four dispatchers. The Department has various responsibilities, including keeping the peace, patrolling the entire county, serving process, and operating the county jail, which houses an average of 40 inmates. In the 1995-96 fiscal year, the total budget for the Sheriff's Department and jail was $705,011.96.

Athan Brown, Roberts' expert witness,[4] testified that Johnson County had a crime index of 22.2, which was higher than both the national crime index of 18.2 and the state index of 18.8. Brown opined that the Sheriff's staff should gradually expand to include 43 employees, increasing to at least 35 employees in 1996. Concluding that the current staff was insufficient to operate the jail or to discharge the other duties of the Sheriff's Department, he recommended the immediate addition of five deputies, two jailers, and one investigator/detective. Brown further suggested that salaries

---

[3]According to the 1990 census.

[4]The parties stipulated that Mr. Brown was an expert in police administration. Among other things, he has served as a patrol officer, deputy sheriff, criminal investigator, chief deputy, police instructor, crime lab and police academy director, and professor of criminal justice.

3

for the existing positions were inadequate, and he proposed specific increases of those salaries.

Brown pointed out that comparable counties spend 13.4% of their total budgets on law enforcement, compared to the 4.0% expended by Johnson County. He also noted that each citizen of Johnson County spent $53.50 annually on law enforcement, compared to the statewide average of $121 per resident. In light of these statistics and his own observations, Brown concluded that an increased budget for the Sheriff's Department and jail was necessary to enable Roberts and his staff to fulfill their statutory obligations and operate the jail within acceptable standards.

Chief Deputy Mark Hutchinson also testified on behalf of Roberts. He stated that there were insufficient officers to perform all of the necessary work of the Sheriff's Department. Hutchinson described occasions on which the lack of sufficient deputies had posed a safety threat to an arresting officer, or had caused an inability to respond promptly to calls for assistance.

Sheriff Roberts testified that, despite devoting all of his working time to properly and efficiently conducting the affairs of the Sheriff's Department, he has been unable to meet all of the obligations of his job. At the time of trial, his deputies were working twelve-hour shifts and were significantly behind in serving papers. Roberts testified that at a minimum, he required one additional investigator, five additional road

4

deputies, and two more jailers.

In opposition to Roberts' case, Lowe maintained that the Sheriff could properly conduct his affairs within existing budgetary constraints. He contended that the jail was in compliance with all requirements imposed by previous inspectors. He further argued that the number of arrests made and papers served by a deputy on an average shift was small, and that an increase in personnel was not necessary. He also testified that a new emergency-911 system, operated outside of the Sheriff's Department, would soon be in effect, thus relieving the Sheriff's Department of the obligation to answer 911 calls and rendering its dispatch positions obsolete.

Lowe also offered the testimony of two members of the Board of County Commissioners. Each maintained that the Sheriff possessed sufficient funds and personnel to do his job.

The trial judge found that Roberts had proven, by a preponderance of the evidence, that additional positions were necessary for the proper performance of the Sheriff's duties. He thus authorized the hiring of four new deputies, one new jailer, two dispatchers (until such time as the new 911 system became effective), and a part-time bailiff. The court then established salaries for each new employee, as well as salary increases for all existing positions. The trial court's judgment was entered on June 3, 1996. Lowe filed his notice of appeal on June 21, 1996. The trial court subsequently entered a supplemental order on July 23, 1996, purporting to amend its judgment to allow

5

Roberts to use the seven new positions "for any legitimate activities of the Sheriff's Department."

II

An application under T.C.A. § 8-20-101, *et seq.* (1993 & Supp. 1996), for authority to employ deputies and to establish their salaries is treated like any other lawsuit. ***Dulaney v. McKamey***, 856 S.W.2d 144, 146 (Tenn. App. 1992). Therefore, our review is *de novo* upon the record with a presumption of correctness as to the trial court's findings, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; ***Dulaney***, 856 S.W.2d 144, 146 (Tenn. App. 1992). The trial court's conclusions of law come to us free of any such presumption. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

The relevant statutory scheme, T.C.A. § 8-20-101, *et seq.* (1993 & Supp. 1996), provides in pertinent part:

<u>**T.C.A. § 8-20-101(a)(Supp. 1996)**</u>

> Where any one (1) of the clerks and masters of the chancery courts, the county clerks and the clerks of the probate, criminal, circuit and special courts, county trustees, registers of deeds, and sheriffs cannot properly and efficiently conduct the affairs and transact the business of such person's office by devoting such person's entire working time thereto, such person may employ such deputies and assistants as may be actually necessary to the proper conducting of such person's office in the following manner and under the following conditions, namely:

6

*    *    *    *

(2) The sheriff may... make application to the judge of the circuit court in the sheriff's county, for deputies and assistants, showing the necessity therefor, the number required and the salary that should be paid each; provided, that in the counties where criminal courts are established, the sheriff may apply to a judge of such criminal court; ...

**T.C.A. § 8-20-102 (1993)**

... the court shall promptly in term or at chambers have... a hearing on the application, on the petition and answer thereto, as will develop the facts, and the court may hear proof either for or against the petition.  The court may allow or disallow the application, either in whole or in part, and may allow the whole number of deputies or assistants applied for or a less number, and may allow the salaries set out in the application or smaller salaries, all as the facts justify.

**T.C.A. § 8-20-103(a) (1993)**

No deputy or deputies or assistants shall be allowed to any office, unless the actual officer is unable to personally discharge the duties of the office by devoting such officer's entire working time thereto, except for field deputy sheriffs.

The office of sheriff is a constitutional office. Tenn. Const. art. VII, § 1.  Although the duties of sheriffs were originally established by common law, most are now prescribed by statute.  *Smith v. Plummer*, 834 S.W.2d 311, 313 (Tenn. App. 1992).  The primary[5] statutory provisions essentially categorize those duties into four classes: 1) serving process; 2) attending the courts; 3) operating the jail; and 4) keeping the peace.

---

[5]Several other statutory provisions enumerate duties of a sheriff.  *See, e.g.,* T.C.A. §§ 5-7-108, 37-1-213, 38-3-102, 41-2-108, and 41-4-101.

T.C.A. § 8-8-201 (Supp. 1996); T.C.A. § 8-8-213; *Smith*, 834 S.W.2d at 313.

## III

We first address Lowe's third and fourth issues, which concern the supplemental order of July 23, 1996. The record reveals that Lowe's notice of appeal was filed on June 21, 1996, approximately one month before the trial court entered the supplemental order. There is no indication in the record that the supplemental order was entered in response to a motion of either party. On the contrary, the order indicates that the trial judge, "upon reflection," had determined that his previous order "should be clarified."

The filing of a notice of appeal transfers jurisdiction to the Court of Appeals. *Steele v. Wolfe Sales Co.*, 663 S.W.2d 799, 802 (Tenn. App. 1983). Consequently, the trial court is deprived of jurisdiction to take further action on the case, and an order entered thereafter by the lower court is of no effect. *Huntington v. Lumpkin*, 281 S.W.2d 403, 406 (Tenn. App. 1954); *James v. Williams*, 99 S.W.2d 831, 832 (Tenn. App. 1936). Thus, the supplemental order entered by the trial court is void and of no effect upon the court's judgment of June 3, 1996. We agree with the appellant that the supplemental order should not have been entered.

## IV

In another issue, Lowe contends that the trial court erred by awarding specific salaries and salary increases to specifically-named employees of the Sheriff's Department. In the judgment, the trial court listed the salary of each position and identified each position by including, in a column captioned "Now Held By," the name of the employee then holding that position. Lowe argues that in doing so, the trial court exceeded its authority under T.C.A. § 8-20-104, which contemplates an "order or decree fixing the number of deputies and salaries." *Id.* Lowe cites the case of **Moore v. Cates**, 832 S.W.2d 570 (Tenn. App. 1992) for the proposition that the trial court is without authority to identify deputies by name and award them salary increases, and thus is limited to authorizing the required number of deputies and fixing salaries for the positions. **Id.**

We disagree with Lowe's contention. Upon review of the judgment, it appears that the trial court included the names of the employees in the "Now Held By" column merely for identification purposes. This is in contrast to the **Moore** case, wherein the trial court specifically set forth the "amount of increases and salaries for the present employees of the... Sheriff's Department," presumably for the purpose of awarding those salaries to particular individuals. **Id.** at 571. In the instant case, we find no error in the trial court's inclusion of the names of employees then holding positions in the Sheriff's Department. Since many of those positions merited different salaries within the same job category, it was necessary to distinguish one position from another in order to match each new salary with its proper position. Thus, we find that the trial

9

court's inclusion of the employees' names was for identification purposes only, i.e., intended to assign each salary to its corresponding *position*, and not to a particular employee.  We therefore find no error in that aspect of the judgment.

V

Lowe also insists that the evidence preponderates against the trial court's finding that additional employees were necessary to enable Roberts to perform his duties as sheriff.

A trial court's authorization of additional employees is subject to the prerequisite that the sheriff demonstrate an inability to "properly and efficiently conduct the affairs of [his or her] office by devoting [his or her] entire working time thereto."  T.C.A. § 8-20-101(a)(Supp. 1996).  As stated in **Cunningham v. Moore County**, 604 S.W.2d 866 (Tenn. App. 1980), the sheriff is required

> to prove in numerical quantity the number of times per day, week, month or year the Sheriff is called upon to perform the statutory duties of his office, that he and his previously authorized employees have devoted their full working time to the performance of such duties and that their combined efforts have not been sufficient to perform all such duties, some of which have not been performed for this reason.

*Id*. at 868.  In **Cunningham**, the court affirmed the trial court's dismissal of a similar claim.  The court noted that, among other things, the sheriff had failed to introduce any evidence

10

regarding the frequency of arrests, complaints, and service of process.  The sheriff likewise had provided no information as to the number of inmates in the county jail, which was occupied only part-time.  As a result, he had failed to carry the burden of proving his inability to discharge, under existing conditions, the statutory duties of his office.

By contrast, in the instant case, Roberts presented evidence pertaining to each of the above-quoted requirements.  In addition to his own testimony, he offered that of his chief deputy, Mark Hutchinson; both testified that the current budget was inadequate, and that the existing staff could not perform all of the duties of the Sheriff's Department.  Roberts provided specific, quantitative evidence concerning calls received, arrests made, and papers served.  The evidence indicates that the deputies were working twelve-hour shifts, were having difficulty responding promptly to calls, and had fallen behind on serving over 300 papers.  Furthermore, the expert witness, Athan Brown, testified regarding the results of his extensive study of the Sheriff's Department and jail.  His findings indicate that existing personnel were inadequate to operate the jail and keep the peace.

In opposition to Roberts' case, Lowe essentially offered only his own opinion, and the opinion of two members of the Board of County Commissioners, that Roberts possessed ample funding and personnel to conduct his affairs.  He presented no expert analysis to rebut that of Brown, and no testimony by any law enforcement official to contradict that of Roberts and

11

Hutchinson.

From the evidence before him, the trial judge concluded that additional officers were necessary for the proper and efficient performance of the sheriff's statutory duties. He thus awarded the Sheriff's Department four new deputies, one additional jailer, and a part-time bailiff. The trial judge also determined that two additional dispatchers should be retained until the implementation of the new 911 system. He then established salaries for all new and existing positions.

In reaching the conclusions that he did, the trial judge was clearly influenced by the testimony of Roberts and Brown. We note that the trial court is in the best position to assess the credibility of the witnesses, and such determinations are entitled to great weight on appeal. *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. App. 1991). Upon review of the record, we are unable to say that the evidence preponderates against most of the trial court's findings regarding the new salaries and the necessity of additional employees. *Dulaney v. McKamey*, 856 S.W.2d 144, 147 (Tenn. App. 1992). We uphold the trial court's award of four additional deputies, one jailer, and a part-time bailiff. We also affirm its modification of the salaries for all existing positions and its establishment of salaries for the new deputies, jailer, and bailiff.

With regard to the award of two additional dispatchers, however, we believe that the evidence does preponderate against the findings of the trial court. At the time of trial, the

12

Sheriff's Department employed four dispatchers.  In his report and testimony, Brown did not recommend *additional* dispatchers; he merely suggested that there be one chief dispatcher and three other dispatchers.  Furthermore, Roberts testified as follows:

> Q.  Now, you have -- you currently have on the payroll four dispatchers?
>
> A.  Correct.
>
> Q.  And is that sufficient?
>
> A.  Yes sir.

The record is devoid of evidence that the Sheriff's Department needed additional dispatchers.  We therefore reverse the trial court's award of those two positions.  We affirm the salaries set by the trial judge for the four original dispatch positions.

VI

The final issue for our consideration concerns the trial court's retroactive application of the new salaries to January 1, 1996.  As noted earlier, the trial was held on May 23, 1996, and the court's judgment was entered on June 3, 1996.

T.C.A. § 8-20-101, *et seq.* (1993 & Supp. 1996), contains no provision for an award of retroactive raises, nor has Roberts cited any authority in his brief to support the trial court's action.  We therefore conclude that the trial court abused its discretion in making the salaries effective retroactively.

13

For the foregoing reasons, so much of the trial court's judgment as pertains to the effective date of the new salaries for the various positions is modified to reflect that they are effective June 3, 1996, the date of the trial court's judgment. We reverse that portion of the judgment that provides for the hiring of two

additional dispatchers, each at an annual salary of $13,000.  The trial court's "supplemental order" of July 23, 1996, is held void for lack of jurisdiction.  The remainder of the trial court's judgment is affirmed.  Costs on appeal are assessed against the appellant and his surety.  This case is remanded to the trial court for such further proceedings as are necessary, consistent with this opinion.


_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.

15